IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )
                              )
        v.                    )      Criminal No. 08-426
                              )
BERTRAM THOMAS TARPLEY        )

O P I N I O N

DIAMOND, D.J.

On December 16, 2008, defendant Bertram Thomas Tarpley was charged in a one-count indictment with trademark counterfeiting on or about May 8, 2008, in violation of 18 U.S.C. §2320(a). Defendant has filed the following pretrial motions: (1) motion to suppress evidence (Document No. 22); (2) motion for discovery (Document No. 23); (3) motion to compel notice by the government of its intention to use certain evidence (Document No. 24); and motion to produce evidence which the government intends to use under Fed.R.Evid. 404(b) and 609 (Document No. 25). After the government filed responses to defendant's motions (Document Nos. 27-30), a suppression hearing was held on March 18, 2010. For the reasons set forth herein, defendant's motion to suppress evidence will be denied, and his other pretrial motions will be granted in part and denied in part.

I.    **Factual Background**

Officer Ronald Croll of the Monroeville Police Department testified at the suppression hearing on behalf of the government. The court finds that the evidence presented at the hearing establishes the facts that follow.

On February 11, 2008, Officer Croll responded to a retail theft at the Burlington Coat Factory ("Burlington"). After addressing the retail theft, the manager of Burlington reported to Officer Croll that a man had been meeting a UPS driver behind the Burlington store and had been receiving packages there. After opening the packages, the man would discard the empty boxes in Burlington's dumpster. The retail theft suspect apparently overheard the manager's conversation with Officer Croll and commented, "that's just Tom. He sells shoes in Wilkinsburg."

Several weeks later Officer Croll spoke to the manager of Burlington, who advised that the man still was receiving UPS deliveries behind the store. Officer Croll told the manager to call him the next time she observed that situation.

Officer Croll went to Burlington on April 28, 2008, after having received a call from the store manager concerning the man in question. Although the man already had departed the area, he left behind an empty box in the dumpster, which Officer Croll

2

recovered.[1]  The address label on the box indicated it was shipped by a company called Alamo, located in New York City, to Thomas Tarpley at an address in Monroeville, Pennsylvania.  The shipment was marked as cash on delivery for $373.88.

Officer Croll testified that he contacted FBI Agent Skoog concerning Alamo.  Agent Skoog informed Officer Croll that Alamo, which operated under a variety of names, was a known shipper of counterfeit goods.  Officer Croll testified that he obtained this information from Agent Skoog sometime prior to May 8, 2008.

On May 8, 2008, Officer Croll again was contacted by a Burlington employee about the man in question.  Officer Croll, who was assisted by Officer Uhrmacker, drove to the rear of the Burlington store.  They observed a man, later identified as defendant, standing near a UPS truck and talking on a cell phone.

The officers approached defendant, who produced his driver's license as identification at their request.  Officer Croll noticed that defendant had a box cutter in his hand, which defendant agreed to hand over to Croll.  At that point, Officer Croll advised defendant he was investigating a complaint involving a

---

[1]Officer Croll testified at the suppression hearing that he recovered the UPS box on April 11, 2008.  The government subsequently filed a motion to supplement the record of the suppression hearing (Document No. 35), which the court granted.  According to the supplement, Officer Croll realized he had testified mistakenly that he recovered the box on April 11, 2008, but upon further review recalled that he recovered it on April 28, 2008.

3

suspicious person.

The UPS driver told defendant that he had to leave and asked if defendant wanted to meet him later to get his boxes. The officers stated they would wait while defendant took delivery of the boxes, but defendant told the UPS driver that he would meet him later.

While Officer Uhrmacker waited with defendant, Officer Croll approached the UPS driver and asked if he knew what was in the boxes. The driver replied, "bootleg stuff." Officer Croll asked the UPS driver if he would make delivery of the boxes at that time. As the UPS driver went to the back of the truck, he repeatedly told Officer Croll that defendant was not hurting anyone and was just trying to take care of his family.

At that point, defendant stated, "it's just my shoes. Do you want to see?" Officer Croll responded that he did, if defendant was willing to show him the shoes. Defendant then paid the UPS driver for the delivery charges and signed for five boxes. The boxes were similar in appearance to the one that Officer Croll previously recovered from the Burlington dumpster.

The officers helped defendant carry the boxes from the UPS truck to his vehicle. Officer Croll asked defendant if he still wanted to show them the contents of the boxes. Defendant replied that he did. Because Officer Croll did not want defendant to handle the box cutter for security reasons, Croll cut open one of

4

the boxes.  Defendant then peeled the tape off the box and opened it.  Defendant removed a Nike shoe box from the larger box. Although the shoes appeared to be Nike athletic shoes, Officer Croll told defendant he believed they were counterfeit.

Officer Croll asked defendant if he knew the shoes were counterfeit.  Though defendant did not verbally respond, he nodded, which Officer Croll construed as an affirmation that the shoes were counterfeit.  Officer Croll told defendant he was going to take the boxes of shoes and have them examined to verify that they were counterfeit.

Officer Croll asked defendant if he had anything else in his vehicle.  Defendant said that he did not, so Officer Croll asked if he could look inside.  Defendant gave Officer Croll permission to look in his vehicle.  When Officer Croll again asked whether defendant was sure there was nothing else, defendant stated it was just his "other shoes."  Defendant opened the rear gate of his vehicle and Officer Croll observed a blanket that covered the contents of the rear storage area.  Defendant removed the blanket. Numerous boxes of Nike shoes were in defendant's vehicle.  Officer Croll told defendant he had to take the shoes.

The officers seized 64 pairs of shoes from defendant's vehicle and 80 pairs of shoes from the five boxes defendant received from the UPS delivery.  All 144 pairs of shoes subsequently were examined and determined to be counterfeit.

5

## II. **Defendant's Motion to Suppress Evidence (Document No. 22)**

Defendant argues that the shoes seized from him should be suppressed because that evidence was obtained in violation of the Fourth Amendment.  Defendant first contends that the officers' searches of the boxes and his vehicle were unlawful because they were conducted without a warrant, probable cause or consent. Defendant further argues that the shoes were seized without a warrant and without consent, and that no lawful basis existed to justify the warrantless seizure.

When a defendant seeks to suppress evidence, he bears the initial burden of "establish[ing] a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant...." United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995).  Once the defendant makes this showing, the burden shifts to the government to demonstrate that the search and seizure were reasonable.  Id. Here, the shoes were seized without a warrant, so the government bears the burden to show the search and seizure were reasonable. The government has sustained its burden in this case.

First, the officers properly approached and questioned defendant behind the Burlington store on May 8, 2008.  Officer Croll had received several reports from Burlington employees that a man, later identified as defendant, had met a UPS delivery driver on numerous occasions behind the store where he received boxes, opened them, and then discarded the boxes in Burlington's

6

dumpster.   This suspicious activity by defendant justified the officers questioning him.

Next, although defendant argued in his suppression motion that he did not consent to the search of the boxes he received from UPS on May 8, 2008, or the subsequent search of his vehicle, Officer Croll's testimony makes clear that defendant voluntarily consented to both searches.  Consent to a search is valid if it is voluntary -if under the totality of the circumstances it is free from explicit or implicit police coercion.   Schneckloth v. Bustamonte, 412 U.S. 218, 228-29 (1973).  Officer Croll credibly testified that defendant volunteered to let him look inside the UPS boxes after he accepted delivery of them, and he also gave Croll permission to look inside his vehicle.   There can be no dispute that defendant's consent to search was voluntary.

Defendant next argues that the officers' warrantless seizure of the shoes cannot be justified under the plain view exception to the warrant requirement.

"The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity."  Illinois v. Andreas, 463 U.S. 765, 771 (1983).  Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is

7

immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993). Thus, three elements must be met to establish the validity of a warrantless seizure under the plain view doctrine: (1) the officer was lawfully in the position from which the object could be seen; (2) the incriminating character of the object was immediately apparent; and (3) the officer had a lawful right of access to the object. <u>See</u> <u>Horton v. California</u>, 496 U.S. 128, 136-37 (1990).

Here, defendant does not challenge the first or third elements of the plain view doctrine outlined above.[2] Defendant only contends that the government cannot satisfy the second element because it was not "immediately apparent" to the officers when they seized the shoes that they were contraband or counterfeit.

In order for an object's incriminating character to be immediately apparent, the police must have probable cause to believe the object is contraband without conducting a further search. <u>Dickerson</u>, 508 U.S. at 375; <u>see</u> <u>also</u> <u>Texas v. Brown</u>, 460

---

[2]The officers were lawfully in a position to view the shoes and had a lawful right of access to them. Defendant's suspicious activity of receiving packages behind the Burlington store justified the officers approaching and questioning him. Defendant subsequently consented to a search by volunteering that Officer Croll could look at the contents of the boxes he received on May 8, 2008. Defendant also permitted Officer Croll to look inside his vehicle.

8

U.S. 730, 741-42 (1983) (recognizing that probable cause for seizure of evidence satisfies immediately apparent requirement).

The "immediately apparent" requirement is satisfied in this case. When Officer Croll seized the Nike athletic shoes on May 8, 2008, he had probable cause to believe they were contraband. By that time, Officer Croll had been advised by Burlington employees that defendant had met a UPS delivery driver behind the store on multiple occasions to receive boxes, which he would open and then discard in the store's dumpster. In addition, Officer Croll previously had recovered a box from Burlington's dumpster addressed to defendant from a company in New York called Alamo. After recovering the box, Officer Croll inquired with FBI Agent Skoog about Alamo and learned that Alamo was a known shipper of counterfeit goods. Further, the UPS driver told Officer Croll that the boxes addressed to defendant contained "bootleg stuff." Finally, when Officer Croll expressed his belief that the shoes defendant volunteered to show him were counterfeit, and asked defendant if he knew that was the case, defendant nodded his head in apparent affirmation.

For these reasons, the court concludes that Officer Croll had probable cause to associate the shoes that were in the UPS boxes and those that were in defendant's vehicle with criminal activity when he seized them. The "immediately apparent" requirement is met in this case, and the warrantless seizure was proper under the

9

plain view doctrine.  Defendant's motion to suppress evidence of the shoes will be denied.

## III. __Defendant's Other Pretrial Motions__

### A. __Motion for Discovery (Document No. 23)__

Defendant has filed an omnibus motion for discovery seeking various categories of information, including _inter alia_ requests for Rule 16 material and for exculpatory and impeachment material.

Generally, governmental disclosure of evidence in criminal cases is governed by Fed.R.Crim.P. 16(a).  The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution."  United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994).  As a general matter, these other areas are limited to the Jencks Act, 18 U.S.C. §3500, and materials available pursuant to the "Brady doctrine."[3]  Id.

The government's response indicates that it already has provided defendant with the information requested in ¶¶3a-3e, ¶¶3g-3i and ¶3u, and it does not have any information responsive to the requests in ¶¶3j-3n, ¶¶3p-3q and ¶¶3s-3t.  With respect to defendant's request for Brady material in ¶3f, the government is

---

[3]Brady v. Maryland, 373 U.S. 83 (1963).

AO 72
(Rev. 8/82)

not aware of the existence of any such exculpatory material. Finally, concerning defendant's requests in ¶3o for a witness list and in ¶3r for Jencks material, the government has indicated it will provide that information to defendant one week prior to trial.

Accordingly, defendant's discovery motion will be granted in part and denied in part. The government will be ordered to turn over all information that falls under Rule 16(a), to the extent it has not already done so, as well as any exculpatory <u>Brady</u> material, to the extent that any such information becomes available. To the extent defendant requests information that does not fall within the scope of Rule 16(a), <u>Brady</u> or the Jencks Act, those requests will be denied.

### B. <u>Motion to Compel Notice by the Government of its Intention to Use Certain Evidence (Document No. 24)</u>

Defendant requests notice by the government of its intent to use evidence under Fed.R.Evid. 404(b). Defendant has filed another similar motion requesting that information, which is addressed below. The government's response indicates that it has provided the notice required by Rule 404(b).

Defendant also seeks disclosure of any evidence that arguably is subject to suppression. The government has responded that it is not aware of any such evidence, except for the shoes obtained by Officer Croll from defendant on May 8, 2008, which already is the subject of defendant's suppression motion addressed above. As

11

a result, this motion will be denied as moot.

C. **Motion to Produce Evidence Which the Government Intends to Use Under Fed.R.Evid. 404(b) and 609 (Document No. 25)**

Defendant has filed a motion pursuant to Fed.R.Evid. 404(b) and 609 to disclose uncharged misconduct evidence that the government intends to offer at trial.

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purposes enumerated in the rule. It provides "that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial." According to the commentary to Rule 404(b), other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case.[4]

In response to defendant's motion, the government has provided notice that it may offer evidence at trial under Rule 404(b) in order to establish defendant's knowledge, intent, motive and absence of mistake with respect to the counterfeit nature of

---

[4]Courts that have considered what constitutes "reasonable notice" have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days).

12

the shoes in this case. The 404(b) evidence relates to defendant's past history of selling counterfeit merchandise in connection with the following: (1) a 2005 incident involving counterfeit CDs and DVDs in Edgewood Borough; and (2) a 2003 incident involving counterfeit CDs in Wilkinsburg, both of which are described more specifically in the government's response. See Document No. 29. The government's response demonstrates that it has complied with Rule 404(b)'s notice requirement. However, to the extent the government decides to introduce any additional Rule 404(b) evidence, it shall provide defendant the required notice ten days before trial.

Defendant next requests notice of the government's intent to use evidence under Fed.R.Evid. 609. Rule 609(a)(1) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of punishment. The only notice requirement in Rule 609 is that the government is required to provide "sufficient advance written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b).

13

Therefore, to the extent defendant seeks immediate notice of the government's intent to use evidence under Rule 609, that request will be denied.  However, if defendant chooses to testify at trial, government counsel will inform defense counsel prior to beginning cross-examination if the government intends to reference any of defendant's prior crimes.

## IV.  Conclusion

For the foregoing reasons, defendant's motion to suppress evidence will be denied, and his other pretrial motions will be granted in part and denied in part as stated herein.

An appropriate order will follow.

*Gustave Diamond*

Gustave Diamond
United States District Judge

Date:  *April 21, 2010*

cc:  Shaun E. Sweeney
     Assistant U.S. Attorney

     Kenneth J. Haber, Esq.
     304 Ross Street
     Suite 400
     Pittsburgh, PA 15219

14